**In re AOV INDUSTRIES, INC., et al.,
Hubert R. Bruce, et al., Appellants.**

**Civ. A. Nos. 82–02085, 83–01978,
83–01901 and 84–00342.**

United States District Court,
District of Columbia.

Sept. 27, 1984.

As Amended Oct. 25, 1984.

On Motion for Reconsideration
Oct. 25, 1984.

Edward L. Genn, Brown, Genn, Brown & Karp, Washington, D.C., for appellant Bruce.

Peter K. Stackhouse, Tolbert, Smith, Fitzgerald & Ramsey, Arlington, Va., for appellants Hawley Fuel Coal, Inc. and Hawley Coal Mart, Inc.

White & Case, Washington, D.C., for appellees, Paul L. Friedman, Anne D. Smith, and Robert G. Berger.

CHARLES R. RICHEY, District Judge.

## INTRODUCTION

The Court has before it two matters in this complex bankruptcy proceeding. One is an appeal from the Bankruptcy Court's award of attorneys fees to the law firm, White & Case, which represented the debtor. For the reasons set forth in this Opinion, the Court, by Order of even date herewith, has affirmed that fee award.

The second matter is before the Court on remand from the Court of Appeals. That matter concerns an appeal of this Court's decision affirming the confirmation by the Bankruptcy Court of the reorganization plan for the debtor. The debtor has claimed that that appeal is now moot, and the Court of Appeals remanded to this Court for a determination of whether the transferees under the plan are good faith transferees, and whether the plan has been so far consummated that effective relief is no longer available. For the reasons set forth in this Opinion, the Court, by Order of even date herewith, has decided that all transferees are good faith transferees, and that the reorganization plan has been so far consummated that, as a practical matter, effective relief is no longer possible.

## FACTUAL BACKGROUND

In November, 1981, AOV Industries and certain subsidiaries ("debtor" or "AOV") filed Chapter 11 proceedings before former Bankruptcy Judge Roger Whelan of the U.S. Bankruptcy Court for the District of Columbia. Soon thereafter, two law firms, Docter, Docter & Salus and White & Case, were appointed as counsel for the debtor. White & Case had previously represented one of AOV's creditor's, H.C. Sleigh Netherlands ("Sleigh"), on two occasions. The firm had handled a technical filing under the Hart-Scott-Rodino Antitrust Improvements Act, and had also made a "due diligence" review of AOV's corporate records for Sleigh.

From the date of its appointment, December 21, 1981, White & Case became involved in a complex series of negotiations between AOV and its creditors, trying to arrive upon an acceptable plan of reorganization. This process also involved extensive corporate work, and the preparation of a Disclosure Statement to submit to the creditors and to the Bankruptcy Court.

White & Case eventually arrived upon a plan acceptable to most parties. Under the terms of the reorganization plan ("the Plan"), creditors and shareholders have been divided into eight classes. The Plan had a somewhat novel arrangement whereby some of the general unsecured creditors, those in class 5, would be paid from two sources. The debtor would contribute approximately $800,000, to be divided *pro rata* among allowable class 5 claims. Two creditors would also contribute in the form of letters of credit. These two creditors, Steag Handel GmbH ("Steag") and Sleigh, were to contribute letters of credit in a total amount of almost $3 million, the proceeds to be available *pro rata* to class 5 members who agreed to release Steag and Sleigh of all claims arising out of transactions with the debtor. The creditors of the debtor were given a choice whether to accept or reject the plan, and a choice whether or not to release Steag and Sleigh.

On June 30, 1983, after extensive hearings on the Disclosure Statement, and three full days of testimony and argument on the reorganization plan ("the Plan"), Judge Whelan confirmed the Plan. Some

creditors, Hawley Fuel Coal, Inc. and Hawley Fuel Coal Mart, Inc., (collectively "Hawley"), and Hubert R. Bruce, appealed the Plan confirmation to this Court. After briefing and further hearings, this Court confirmed the Plan in an Order and Opinion dated July 26, 1983. *In re AOV Industries*, 31 B.R. 1005 (D.D.C.1983). Bruce brought a motion for reconsideration, which this Court denied on August 27, 1983. Bruce and Hawley filed appeals in the Court of Appeals for the District of Columbia Circuit, which appeals are the subject of part of today's Opinion. With those appeals pending, the Bankruptcy Court, in September, 1983, entered an order effecting the commencement of the operations under the Plan.

Pursuant to that Order, many transactions in accordance with the Plan have now taken place. As a result of those transactions, Sleigh is now the 100% shareholder of the debtor, and Steag has a $2.6 million security interest in the debtor's assets. Some of these transactions are more fully explained later in this Opinion.

Mr. Bruce appeals the fee awarded to White & Case for its representation of the debtors in the Chapter 11 proceedings. Judge Whelan awarded those fees in an oral ruling on December 2, 1983, confirmed by a December 21, 1983 Order. Mr. Bruce is the only creditor who appeals this fee award.

The fees awarded to White and Case had been contested several times prior to Judge Whelan's ruling. On October 7, 1983, White & Case filed with the Bankruptcy Court an application for fees that totalled $1,692,373.50. (White & Case had earlier applied for, and was granted, interim awards of fees. Those interim awards are not before the Court in this case.) The fee application covered 42 pages, documenting the number of hours spent by each individual in the firm. White & Case also submitted, as an appendix, copies of all time records for the individuals involved. That application, which was well and thoroughly prepared, together with the appendix, constituted an impressively large amount of paper, which was carefully analyzed by the experienced Bankruptcy Judge before rendering his decision.

In October, 1982, the debtor's President, Mr. Peter Gilchrist, had objected to the amount of the fees. Because Mr. Gilchrist had not become President of AOV until June, 1982, his objections concerned only the work performed by White & Case from that time on. Mr. Gilchrist submitted an affidavit and testified at the hearing on the fee application before Judge Whelan. His affidavit, contained several objections to the fees claimed by White & Case. He objected to the inexperience in bankruptcy matters (the "learning curve"), the coordination costs, the unnecessary "double teaming", the hourly rates, the unfinished contracts, the time spent on a position regarding a taxation matter (where White & Case later reversed its position), and other specific matters handled by White & Case. Gilchrist Affidavit 2–6. The affidavit concluded that "these matters will have cost the debtor and thus the creditors dearly if heavy discount to the claimed fees is not made." *Id.* at 9.

With these concerns in mind, Mr. Gilchrist began negotiating with White & Case about the amount of the fees.[1] Although unsuccessful at first, the negotiations eventually resulted in an agreement between Gilchrist and White & Case whereby White & Case agreed to reduce its request for fees from $1,692,373.50 to

---

1. Mr. Gilchrist negotiated with many other professionals involved in the case to reduce fee applications, making available more capital for the operation of the reorganized company. Tr. (11/30/83) at 43–52; 103–05. (There are five transcripts cited in this Opinion. Two relate to hearings before Judge Whelan concerning the fees—one on November 30, 1983, and one on December 2, 1983. One transcript relates to hearings on the appeal of the fee application in this Court on April 16, 1984. Two hearings were held in this Court after the Remand Order by the Court of Appeals—one on July 26, 1984, and one on August 1, 1984. In addition to these transcripts, this Opinion cites to Judge Whelan's oral ruling on the fee issue from December 2, 1983.)

$1,330,373.50, which represented a reduction of 21.4 percent.

Mr. William Perlstein, the Disbursing Agent under the Plan, also objected to White & Case's fees.[2] He filed with the Bankruptcy Court a response to the fee application, seeking a further reduction of $308,570.62. This reduction was sought in regard to matters which occurred before June 1982, when Mr. Gilchrist became President of AOV, as well as to matters occurring after that time, which events already had been the subject of negotiations between White & Case and Mr. Gilchrist.

The Hearings on the fee application took place before Judge Whelan on November 30 and December 2, 1983. Briefs had been submitted by White & Case, Mr. Perlstein, Mr. Bruce, and the U.S. Trustee.[3] Three witnesses testified at this hearing, all three produced by White and Case: Mr. Gilchrist, Mr. John Barnum (the White & Case partner in charge of the matter), and Charles Docter (of the law firm of Docter, Docter & Salus, special bankruptcy counsel for the debtors). Counsel for the Disbursing Agent, counsel for Mr. Bruce, and the U.S. Trustee cross-examined each witness. White & Case presented charts and documentary evidence in support of its fee application.

After reviewing the briefs and hearing the evidence, Judge Whelan awarded White & Case fees totaling $1,275,000. This was $55,373.50 less than the amount agreed upon between White and Case and Mr. Gilchrist. It represents a total reduction of 25 percent from the original fee request of $1,692,373.50. Judge Whelan's comprehensive oral ruling from the bench was followed by a December 21, 1983 Order. That ruling is the subject of this appeal.

**A.** *The Standard of Review.*

To determine fee awards, the Bankruptcy Court must act in accordance with Section 330 of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 330 (1978):

(a) After notice to any parties in interest and to the United States Trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to ... the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such ... attorney, ... and by any paraprofessional persons employed by such ... attorney, ... based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title.

■ This statute grants to bankruptcy judges broad discretion in determining fee awards. *In re Casco Bay Lines, Inc.,* 25 B.R. 747, 753 (Bankr. 1st Cir.1982). Accordingly, this Court will not disturb the fee award unless the bankruptcy judge in this case abused his discretion. *Casco Bay,* 25 Bankr. at 753; *Matter of U.S. Golf Corp.,* 639 F.2d 1197, 1201 (5th Cir.1981).

On August 1, 1983, Bankruptcy Rule 8013 became effective:

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.[4]

---

**2.** Mr. Perlstein, a member of the law firm of Wilmer, Cutler & Pickering, had previously represented the Creditors' Committee for Alla-Ohio Valley Coals, Inc., one of AOV's subsidiaries. The appellant, Mr. Bruce, also challenges the fees recovered by Wilmer, Cutler & Pickering in a case presently before Judge Norma Johnson of this Court. *AOV Industries Fund v. Bruce,* No. 84–0335 (D.D.C. filed February 16, 1984).

**3.** There were five U.S. Trustees involved, at different times, in the proceedings. Tr. (11/30/83) at 24. One of them opposed White & Case's fees in the hearing before Judge Whelan. Tr. (12/2/83) at 336–38.

**4.** This Rule accords to the findings of a bankruptcy judge the same weight given the findings of a district judge under Rule 52 Fed.R.Civ.P. *Advisory Committee note.*

■ This rule has been held to supercede any Interim Rules passed after the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). *In re Morrissey*, 717 F.2d 100, 104 (3d Cir.1983). Accordingly, this Court will not overturn Bankruptcy Judge Whelan's findings of fact unless they are clearly erroneous.[5] Even after *Northern Pipeline*, therefore, bankruptcy courts have considerable discretion in awarding fees.

### B. The Legal Framework and Its Application.

As a reviewing court, this Court must give "due regard ... to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed.R.Bankr. 8013. This complex case was before Judge Whelan for almost two years. He heard extensive testimony from witnesses with whom he had become familiar. His ruling was based in part on "the overall, credible testimony and able testimony of Mr. Barnum [the White & Case partner in charge of the matter]", (Ruling at 21), and on his "own independent knowledge of the case, which had extended now ... close to a two-year period of time." (Ruling at 4). This Court will not disturb those findings.

The record demonstrates that Judge Whelan, in determining White & Case's fee award, adopted the approach set forth in *Copeland v. Marshall*, 641 F.2d 880 (D.C. Cir.1980) (*en banc*). (*See* Ruling at 6: "the court must now advert to the specific standards mandated by Copeland versus Marshall.") *Copeland*, a Title VII case, adopted a "lodestar" approach, in which a court is to begin with a base amount obtained by multiplying a reasonable hourly rate by the number of hours reasonably expended by the attorneys. Ruling at 6; *Copeland*, 641 F.2d at 891. *See also Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). This "lodestar" fee may then be adjusted to reflect other factors, including the quality of representation, the contingent nature of success, the novelty and difficulty of the issues, and the ultimate results obtained by the attorneys. *Copeland*, 641 F.2d at 892–94; *Laffey v. Northwest Airlines*, 572 F.Supp. 354, 376 (D.D.C.1983). *See also Hensley*, 461 U.S. at 434, 103 S.Ct. at 1940 (noting, in a fee award under 42 U.S.C. § 1988, "the important factor of the 'results obtained.'")

In the present case, Judge Whelan began with a base amount. Ruling at 6. He considered the number of hours reasonably spent, *Id.* at 20–28, finding that approximately 350 hours were duplicative, and thus non-compensable. *Id.* at 26. He considered the hourly rates charged by White & Case, as reduced through negotiations with Mr. Gilchrist, finding them reasonable. *Id.* at 27. Concerning the rates, Judge Whelan followed those suggested as reasonable by Chief Judge Robinson, of this Court, after considering extensive testimony and exhibits, in *Laffey*. Ruling at 26. *See Laffey*, 572 F.Supp. at 371–75 (discussing the proper hourly rates). Judge Whelan also noted that White & Case's services resulted in the Plan, and that the Plan confirmation "involved several unique issues." Ruling at 27.

■ Although *Copeland* and *Laffey*, like many other leading attorneys' fees cases,[6] involved fee awards under one of the Civil

---

5. In earlier proceedings in this case, this Court reviewed the Bankruptcy Court's confirmation of the Plan under Interim Rule (e). The Court applied a "substantial evidence" test to the Bankruptcy Court's findings of fact. *In re AOV Industries*, 31 B.R. 1005, 1008 (D.D.C.1983). The Court now holds, however, that Bankruptcy Rule 8013, effective last August, prevails over Interim Rule (e). *Accord, Morrissey*, 717 F.2d at 104.

6. *See e.g. Blum v. Stenson*, —— U.S. ——, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (fee award under 42 U.S.C. § 1988); *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (fee award under 42 U.S.C. § 1988); *Nat'l Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319 (D.C.Cir.1982) (fee awards under Freedom of Information Act, 5 U.S.C. § 552, and under Title VII; 42 U.S.C. § 2000e–5(k)); *Laffey*, 572 F.Supp. 354 (fee award under Title VII, 42 U.S.C. § 2000e–5(k)).

Rights acts, many of the considerations involved in the "lodestar" approach are relevant in a bankruptcy context. *Casco Bay*, 25 B.R. at 755. The statute under which Judge Whelan was to determine the fees, 11 U.S.C. § 330, mentions several of the same considerations involved in the "lodestar" analysis, namely, "reasonable compensation for actual, necessary services," considering also "the time, the nature, the extent, and the value of such services." Furthermore, the statute specifically refers to "the cost of comparable services other than in a case under this title." 11 U.S.C. § 330 (1978). Judge Whelan's "lodestar" analysis, therefore, was proper in this bankruptcy context. Other courts have found the "lodestar" approach appropriate in bankruptcy cases. *Casco Bay*, 25 B.R. at 755.

### APPELLANT'S ARGUMENTS

The appellant, Mr. Bruce, attacks the fee award through three major arguments. Appellant first claims that too much of the estate is being paid out in the form of professional fees, leaving too little for the creditors. This, he argues, demonstrates that White & Case's efforts produced inadequate results, and these inadequate results prohibit affirmance of the fee award. Secondly, Mr. Bruce claims that Bankruptcy Judge Whelan erred by failing to appoint a hearing examiner to investigate White & Case's fee application. Mr. Bruce also contends that White & Case should not have represented AOV because of its prior representation of Sleigh, one of AOV's creditors. He claims that this alleged conflict of interest mandates reversal of the Bankruptcy Court's fee award. Each of these arguments, as shown below, is without merit.

#### 1. The Results Obtained Were More Than Adequate.

Mr. Bruce's main attack on the fees awarded to White & Case concerns the "results obtained". Specifically, he argues that, although the efforts of White & Case resulted in the confirmation of the reorganization Plan, too much of the estate was paid out in the form of professional fees, leaving AOV's creditors, particularly the unsecured creditors, with too little.[7] Bruce argues that the current judicial trend focuses more on the results obtained than in the past. Bruce directs the Court's attention to *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and *Action on Smoking and Health v. Civil Aeronautics Board*, 724 F.2d 211 (D.C.Cir. 1984) ("*ASH*"). Citing *Hensley*, *ASH* stated that " 'the most critical factor is the result obtained' and '[t]he result is what matters.' " 724 F.2d at 218–19.

*Hensley* interpreted the Civil Rights Attorneys Fees Awards Act, 42 U.S.C. § 1988. *ASH* involved the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A). In each of those attorneys fees statutes, only the "prevailing party" may recover fees. The attorneys fees provision of Title VII[8] contains similar requirements. *Hensley* applies to all of those sections, that is, "in all cases in which Congress has authorized an award of fees to a 'prevailing party.' " 103 S.Ct. at 1939, n. 7.

■ The fees provision of the Bankruptcy Code, 11 U.S.C. § 330, of necessity contains no such requirement that a party "prevail" to recover fees. Bankruptcy cases are not one-on-one adverserial contests. The courts, therefore, do not have to examine whether the attorney's client prevailed. The relevant inquiries under § 330 concern whether the services were necessary and reasonable, the value of such services, and the cost of comparable services in non-bankruptcy matters. As stated above, the record amply demonstrates that Judge Whelan made those inquiries. Furthermore, because the consid-

---

7. Bruce contends that the total fees (White & Case's fees, as well as other law professional fees) represent 80 percent of the estate, (Tr. (4/16/84) at 70; Appendix to Brief for Appel- lant at 13), or perhaps even "closer to 90 per- cent" of the estate. Tr. (4/16/84) at 25.

8. Fees may be awarded to the "prevailing par- ty." 42 U.S.C. § 2000e–5(k).

eration of " 'results obtained' generally will be subsumed within other factors used to calculate a reasonable fee", *Blum v. Stenson*, 104 S.Ct. at 1549, Mr. Bruce's argument largely becomes one of semantics.

■ Judge Whelan certainly did consider the results in the case. He noted that "there is a relatively small percentage ... available to the general, unsecured creditors. However, the court has had to weigh this against the very skillful and dedicated, in this court's opinion, services that had been brought to bear and that did, in fact, result in a plan of confirmation." [9] Ruling at 13. Because of his concerns about the unsecured creditors, Judge Whelan increased the percentages available to the creditors by reducing White & Case's fees. Even if this Court might have, if it were the Bankruptcy Court, chosen a different figure, this would not be reason enough to disturb the considered opinion of the Bankruptcy Judge, who is an expert in these matters. *See Casco Bay*, 25 B.R. at 753 (bankruptcy courts given broad discretion).

### 2. No Hearing Examiner was Required.

■ Mr. Bruce contends, citing little authority, that the Bankruptcy Court erred by not appointing a hearing examiner or special master to determine the fee award to White & Case. The evidence on this issue, he states, was too voluminous for adequate consideration by Judge Whelan alone. It is true that there was a substantial amount of evidence concerning the fee issue, but this argument has no legal foundation, and therefore must fail.

Specifically, Mr. Bruce claims that the Bankruptcy Judge did no more than conduct "spot checks" of the records to determine the reasonableness of the fee award. Judge Whelan addressed Mr. Bruce's request for an independent examiner:

> ... at this point, it is appropriate to address, for example, the suggestion of Mr. Genn [Bruce's counsel] that some type of independent examiner review

these matters. The court is of the opinion that that would not serve the best interest of the estate, and essentially would be in derogation of what is of necessity the court's own independent obligation to review such fee matters. And although it is impossible to review in a case of this size, extending over a long period of time each and every fee entry, which I would point out the court does in almost all Chapter 11 cases where that can be done, it certainly is impossible in a case of this nature ....

> Therefore, what the court usually does in connection with the actual review of the underlying records is to effect somewhat of a spot check of certain items to see that they correspond with the court's understanding of its own minutes and its involvement in a given hearing. Ruling at 15–16.

Mr. Bruce asserts that this passage is tantamount to an admission by Judge Whelan that he inadequately reviewed the fee application. Bruce further asserts that this admission is justification enough to hold that the Bankruptcy Court erred in failing to appoint an independent examiner. These arguments misconceive the Bankruptcy Judge's duties in connection with ascertaining fees. They also overlook the fact that the Bankruptcy Judge was intimately familiar with every aspect of the case from the beginning, and even before Mr. Bruce was in the case.

Although Judge Whelan addressed the possibility of an independent examiner, there is considerable doubt as to whether he had authority to appoint one. Bankruptcy Rule 9031, entitled "Masters Not Authorized", states that "Rule 53 F.R. Civ.P. does not apply in cases under the Code." (Rule 53, Fed.R.Civ.P., provides for appointment of masters by the District Court.) The Advisory Committee note to Bankruptcy Rule 9031 states that "[t]his rule precludes the appointment of masters in cases and proceedings under the Code."

---

**9.** The Plan, of course, had been upheld by the bankruptcy court, and by this Court. *In re AOV*

*Industries,* 31 B.R. 1005 (D.D.C.1983).

Mr. Bruce recognizes this provision, but asserts, citing no authority, that "[c]ourts of equity, which the bankruptcy court most assuredly is, have inherent power to appoint special masters." Appendix to Brief for Appellant at 19.

Even assuming, *arguendo*, that Judge Whelan had the authority to appoint a special master, his personal review of the records was sufficient. In this regard, this case falls squarely under the holding of *Copeland*, 641 F.2d at 903. There the Court of Appeals recognized that the District Court did not closely scrutinize every entry in the voluminous fee application, but stated:

> It is neither practical nor desirable to expect the trial judge to have reviewed each paper in this massive case file to decide, for example, whether a particular motion could have been done in 9.6 hours instead of 14.3 hours.

The Court in *Copeland* went on to quote from *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 116 (3d Cir.1976) (*en banc*):

> [We did not and do not] intend that a district court, in setting an attorneys' (sic) fee, become enmeshed in a meticulous analysis of every detailed facet of the professional representation. It was not and is not our intention that the inquiry into the adequacy of the fee assume massive proportions, perhaps even dwarfing the case in chief. *Once the district court determines the reasonable hourly rates to be applied, for example, it need not conduct a minute evaluation of each phase or category of counsel's work.*[10]

641 F.2d at 903. (Emphasis in *Copeland*). Thus, *Copeland* and *Lindy Bros.* rebut Mr. Bruce's assertion that the Bankruptcy Court should have conducted a minute evaluation.

*3. There was No Conflict of Interest.*

■ Mr. Bruce again contends that White & Case should have been prohibited from representing AOV because of its prior representation of Sleigh, an AOV creditor. Sleigh is now the 100% shareholder of the debtor.

Mr. Bruce has raised this argument, and lost, on several occasions. *See In re AOV Industries*, 31 B.R. at 1011–12. However, Mr. Bruce contends that new evidence has been unearthed since the last time this Court faced the issue. This evidence consists of White & Case's admission that its report on its "due diligence" investigation of AOV was not sent to Sleigh until *after* the bankruptcy filing. As demonstrated below, White & Case had fully disclosed all material facts, *Id.* at 1012, and this new information adds nothing to Mr. Bruce's already stale claim of conflict of interest.

Even though White & Case's final report was turned over to Sleigh, a creditor of AOV, after AOV had filed for bankruptcy, it was transmitted *before* White & Case assumed its representation of AOV. Thus there was no violation of Section 327(c) of the Bankruptcy Code, which provides that:

> [A] person is not disqualified for employment [by the debtor in possession] solely because of such person's employment by or representation of a creditor, but may not, *while employed by the [debtor in possession]* represent, in connection with the case, a creditor.

11 U.S.C. § 327(c) (1978) (Emphasis supplied). Since White & Case did not represent Sleigh while employed by AOV, this claim fails.

### REMAND

On July 26, 1983, this Court approved Judge Whelan's confirmation of the Plan. *In re AOV*, 31 B.R. 1005. After this Court denied Mr. Bruce's Motion for Reconsideration, Mr. Bruce and Hawley appealed to the Court of Appeals for this Circuit. While the appeals were pending, on April 12, 1984, AOV filed a Motion to Dismiss the Appeals as Moot. That motion was opposed by the appellants. By Order dated July 24, 1984, the Court of Appeals re-

---

**10.** Mr. Bruce does not contest the hourly rates in this case. Tr. (4/16/84) at 28.

manded the case to this Court "for such proceedings as are necessary for a determination of whether the transferees under the Plan are good faith transferees, and whether the Plan has been so far consummated that the court can no longer grant effective relief." *In re AOV Industries, Inc.*, No. 83–02085 (D.C.Cir. July 24, 1984) (Remand Order).

Pursuant to that Order, this Court, noting that the Court of Appeals ordered expeditious consideration of this matter, held a hearing on August 1, 1984. The purpose of the hearing was to receive evidence concerning the transactions which have been effected pursuant to the Plan. To that end, the Court heard several hours of testimony, including cross examination testimony, from the two people most involved in the transactions, Mr. Gilchrist, President of AOV, and Mr. Perlstein, the Disbursing Agent. The parties also submitted thirty-six exhibits to the court.[11]

### A. Good Faith Transferees.

#### 1. The Legal Standard.

Section 363(m) of the Bankruptcy Act provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m) (1978). The Bankruptcy Code does not attempt to define "good faith". The Code borrowed the concept from Bankruptcy Rule 805, which used sim-

ilar language. 2 Collier on Bankruptcy ¶ 363.14 (15th ed. 1984).

Because the Code does "not define 'good faith purchaser', the courts have consistently used the traditional equitable definition of 'good faith purchaser' as one who buys the property in 'good faith' and 'for value'." *In re Kings Inn*, 37 B.R. 239, 243 (Bankr. 9th Cir.1984) (citing *In re Bel Aire Associates, Ltd.*, 706 F.2d 301, 305 (10th Cir.1983)). "The misconduct which would destroy a buyer's 'good faith purchaser' status at a judicial sale ordinarily 'involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" *Bel Aire*, 706 F.2d at 305, n. 11 (quoting *In re Rock Industries Machinery Corp.*, 572 F.2d 1195, 1198 (7th Cir.1978).

#### 2. The Application of the Standard in This Case.

■ Upon careful consideration, the Court concludes that there is no basis for finding anything but good faith in the execution of the Plan. Most of the issues bearing on good faith have already been determined by the Bankruptcy Court, when it confirmed the Plan, and by this Court. *In re AOV*, 31 B.R. at 1005. In ruling on the appeal of the confirmation of the Plan, this court noted that "[o]ne of the critical requirements for confirmation of a reorganization plan is that the plan be proposed in good faith and not by any means forbidden by law. 11 U.S.C. § 1129(a)(3)." *Id.* at 1011. The Court then concluded that Sleigh and Steag were "making enormous contributions to the plan in return for the interests they will receive." *Id.* The Court found "no bad faith on their part." *Id.*

That Opinion, of course, did not address any actions taken pursuant to the Plan,

---

**11.** While this evidentiary hearing was agreeable to the appellee, AOV, (Tr. (7/26/84) at 13), Appellant Bruce suggested that the Court should conduct more discovery in order to comply with the Remand Order. *Id.* at 20–25. Appellant Hawley, however, felt that the Court needed no new evidence, and that even the August 1 hearing was unnecessary. *Id.* at 46. The Court

entertained these views on July 26, 1984, and then decided to hold the August 1 hearing, receiving the evidence from Mr. Gilchrist and Mr. Perlstein. Although he had the opportunity, Appellant Bruce presented no witnesses, and presented one exhibit. Appellant Hawley did not participate in the August 1 hearing.

because none had yet been taken. The transfers under the Plan did not commence until after Judge Whelan's Order of September 19, 1983. However, all actions taken by Sleigh and Steag since that Order have been taken *pursuant to that Court Order. See In re Information Dialogues,* 662 F.2d 475, 476–77 (8th Cir.1981) ("absent a stay, court-approved transfers are final in that transferees are protected against subsequent reversal.") Therefore, that Steag and Sleigh are using the Plan to extract releases, and that they are architects of the Plan, are facts now made irrelevant by Court Orders. Because all actions were taken in furtherance of Court Orders, and pursuant to the confirmation in the Bankruptcy Court and the affirmance in this Court, there is simply no basis for finding the level of fraud required to negate good faith. *E.g. Kings Inn,* 37 B.R. at 243.

The appellants, however, stress that because appeals were pending when many of the transactions were taken, those transactions could not have been taken in good faith under the terms of the Plan. The argument runs as follows: Article 6 of the Plan states that the "first Distribution to Class 5 creditors shall be made within sixty (60) days from the Consummation Date." Article 2 defines "Consummation Date" as "a date not more than 5 days after the Effective Date . . . ." Article 2 also defines "Effective Date" as "the earliest date upon which (1) the date for appeal of Confirmation has expired, and (2) there is no appeal pending to the Order of Confirmation." Because an appeal of the confirmation is pending, appellants argue, no distribution is permitted to class 5 creditors and Sleigh and Steag are prohibited from making any contribution under the Plan. Therefore, because these transactions are prohibited, Sleigh and Steag cannot be good faith transferees.

This argument, while not without some minimal merit in circumstances not presented here, reaches too far. If the Court were to accept it, none of the transfers under the Plan, including those to entirely innocent third parties, would be safe. According to this argument, that effective date has not yet occurred, more than a year after this Court affirmed the confirmation. Judge Whelan, presumably desiring to begin operations under the Plan, ordered them to start. So the fact remains that every action was taken pursuant to a Court order. That the Order is on appeal is irrelevant to the question of good faith under the language of § 363(m). Accordingly, there is still no evidence of anything less than good faith on the present record.

### B. Substantial Consummation.

■ As previously noted herein, the Court of Appeals remanded with directions for a determination of whether the Plan of confirmation as affirmed by this Court has been so far consummated that the Court of Appeals can no longer grant effective relief. The issue of mootness, because of substantial consummation of a plan of reorganization, turns on the facts of each case. *Ohio v. Madeline Marie Nursing Homes,* 694 F.2d 449, 463 (6th Cir.1982). For the reasons stated below, the Court finds that the Plan has been substantially consummated, rendering ineffective any judicial relief.

Mr. Bruce unsuccessfully sought a stay of the July 26, 1983 Order of this Court which led to the commencement of operations under the Plan. By Order dated August 12, 1983, this Court denied his request for a stay. Mr. Bruce also petitioned the Court of Appeals for a stay of the July 26 Order. The Court of Appeals denied that request on September 15, 1983. Appellant Hawley never requested a stay of the proceedings. Thus, because no stay was obtained, ever since the Bankruptcy Court's Order of September 12, 1983, which granted AOV authority to close under the Plan, the debtor has conducted transactions according to the Plan. Because the testimony of Mr. Gilchrist and Mr. Perlstein demonstrates that (a) substantially all of the property proposed by the Plan to be transferred has been transferred, (b) the successor company has assumed the business and the management of all or substantially all of the property dealt with by the Plan, and

(c) distributions under the Plan have commenced, the Plan has been substantially consummated within the meaning of 11 U.S.C. § 1101(2). Furthermore, the transactions explained below demonstrate that the Plan has been so far consummated that, as a practical matter, effective relief is impossible.

Mr. Gilchrist testified at length about transactions under the Plan. He testified that all actions under Article III of the Plan, respecting payments to certain priority creditors, had been taken. Tr. (8/1/84) at 16. Cash settlements were finalized with banks and North Carolina agency creditors. *Id.* at 17–24. The transfer of one-half interest in the Morehead City, North Carolina, port facilities has been completed. *Id.* at 32–34. Steag and Sleigh have opened irrevocable letters of credit, and have paid cash and made guarantees to AOV. *Id.* at 40–46.

Additionally, various subsidiaries of the reorganized company have entered into agreements, mostly with third parties not presently before the Court. *Id.* at 57–60; 122. One half of the stock has been sold to an independent third party. *Id.* at 104–05.

Mr. Perlstein, the Disbursing Agent appointed by the Bankruptcy Court, testified that "the entire Plan has been implemented." *Id.* at 165. Many payments to creditors are disputed, and thus are awaiting settlement. 165–68; 198. However, this is not unusual, for such disputed claims often remain to be resolved until after consummation. *Id.* at 200–01. *See Information Dialogues,* 662 F.2d at 476 (where some disputed claims were awaiting resolution, but because substantial elements of the plan were implemented, no effective relief was available).

With the exception of a copy of his Amended Complaint, which was used in the cross-examination of Mr. Gilchrist, Mr. Bruce presented no evidence at the hearing. He presented no witnesses, and since that time he has not brought to the Court's attention any information tending to show that effective relief is available. The Court, considering the evidence before it, finds that the descriptions of these transactions, in the record, demonstrate that this Plan involves a complex series of interrelated transactions. In such a case as this, with most of the matters already completed, "reversal of the order confirming the plan of arrangement, which would knock the props out from under the authorization for every transaction that has taken place, would do nothing other than create an unmanageable, uncontrollable situation for the Bankruptcy Court." *In re Roberts Farms,* 652 F.2d 793, 797 (9th Cir.1981). Accordingly, effective relief is no longer available.

## CONCLUSION

After careful review, the Court today upholds the decision of the Bankruptcy Court in awarding attorneys fees in the amount of $1,275,000 to the law firm of White & Case, which had represented the debtor throughout its period of bankruptcy. The Court further finds said amount to be fair and reasonable based upon all factors set forth herein, and the statutory and case law applicable thereto.

Moreover, the appellant presented no evidence demonstrating that the Bankruptcy Judge abused his discretion in making that award. Accordingly, the Court has, by Order of even date herewith, Ordered that Bankruptcy Court's decision will not be disturbed on the question of attorneys fees.

The Court today has also decided, in the matter on remand from the Court of Appeals, that all transferees under the Plan are good faith transferees. Furthermore, based on the record before it, the Court finds that the Plan has been so far consummated that effective relief is now impossible, and that to disturb or modify the same now would create a legal nightmare not contemplated by the Bankruptcy laws nor any competent authority known to this Court.

For the reasons set forth herein, the Court has issued an Order of even date herewith consistent with this Opinion.

## ORDER

Before the Court are two matters in this bankruptcy proceeding. One is an appeal from the Bankruptcy Court's decision to award legal fees in the amount of $1,275,-000 to the law firm of White & Case. The other is a matter before the Court which came about as a result of a remand from the United States Court of Appeals for this Circuit to determine whether the transferees under the Plan of Reorganization [1] are good faith transferees, and, also, whether the plan has been so far consummated that effective relief is no longer available.

In accordance with the findings of fact and conclusions of law as set forth in the Opinion of this Court, of even date herewith, it is, by the Court this 27th day of September, 1984,

ORDERED that the Bankruptcy Judge's Order of December 21, 1983, awarding and approving legal fees in the amount of $1,275,000 to the law firm of White and Case be, and the same hereby is, approved and affirmed, as fair and reasonable; and it is

FURTHER ORDERED that all transferees under the plan are good faith transferees and that the plan has been so far consummated that effective relief is no longer available; and it is

FURTHER ORDERED that the above-entitled cause shall be, and hereby is, a final judgment on the issue of attorneys' fees and, having answered the questions propounded to it by the United States Court of Appeals for this Circuit, the above-entitled matters shall stand dismissed from the dockets of this Court.

## ON·MOTION FOR RECONSIDERATION

Before the Court is a Motion submitted by the appellant seeking reconsideration of this Court's September 27, 1984 Order and Opinion in the above-captioned cases. For the reasons herein set forth, the Court decides to deny the Motion.

Upon careful review, the Court concludes that the Opinion of September 27 covered all relevant issues in this case. Although the Court is under no obligation to respond to the arguments of the appellant, the Court herein addresses some of Mr. Bruce's contentions, as best they can be determined, from the papers recently filed.

Mr. Bruce challenges the Court's standard of review concerning the Bankruptcy Court's fee award to White & Case. Mr. Bruce asserts that *Copeland v. Marshall*, 641 F.2d 880 (D.C.Cir.1980), compels the Court to reconsider its standard of review. *Copeland* stated that an "appellate court, *in a pinch*, may independently review the record." 641 F.2d at 902 (emphasis supplied). As the Opinion of the Court makes clear, because former Bankruptcy Judge Whelan lived with this complex bankruptcy case for two years before awarding fees, and because he carefully considered the fee award, this Court never felt the "pinch" requiring an independent review. Significantly, Mr. Bruce nowhere mentions Bankruptcy Rule 8013, relied upon by this Court, which states that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."

Mr. Bruce also raises, yet another time, the conflict of interest issue surrounding White & Case's representation of AOV. That issue, however, has been fully addressed several times, including in the Court's Opinion of September 27, where the Court referred to it as "already stale". Opinion at 18. Mr. Bruce now cites *In re Casco Bay Lines*, 25 B.R. 747 (Bankr. 1st Cir.1982), a case relied upon by the Court on other issues, but one which was never before noted by Mr. Bruce. *Casco Bay* stands for the proposition that a lawyer may not represent a debtor and a creditor at the same time, a situation not before the

---

**1.** The Plan of reorganization was affirmed by the Bankruptcy Court, and, by this Court by

Order and Opinion dated July 26, 1983, *In Re AOV Industries, Inc.,* 31 B.R. 1005 (D.D.C.1983).

Court in this case. Again, Mr. Bruce cites no rule that has been violated by White & Case's prior representation of the debtor.

Mr. Bruce has also noted the Court of Appeals' very recent (September 28, 1984) reversal of *Laffey v. Northwest Airlines*, 572 F.Supp. 354 (D.D.C.1983). This Court had relied upon the District Court Opinion in *Laffey* in assessing the fee award to White & Case. The recent *Laffey* decision, however, holds that, in assessing attorneys' fees, the courts should generally award "the firms' established billing rates." (746 F.2d 4, at 24 No. 83–1838, slip op. at 41). Because White & Case in the present case agreed, in negotiations with the debtor's president, to *lower* its normal rates, Mr. Bruce can find no comfort in *Laffey*.

Concerning this Court's determination of the Remand issues, Mr. Bruce stresses the absence from the Court's Opinion of *In re International Environmental Dynamics*, 718 F.2d 322 (9th Cir.1983). That case, however, did not involve an appeal from a confirmed reorganization plan, nor any third party before the court.

Mr. Bruce also brings to the attention of the Court a recent case not previously addressed by the parties or the Court: *Dahlquist v. First National Bank, Sioux City, Iowa*, 737 F.2d 733 (8th Cir.1984). There the court confirmed a claim of mootness to a sale to a third party, a situation similar to that here. Surely *Dahlquist* does not merit reconsideration of the Court's Opinion.

For these reasons, and upon consideration of the Motion for Reconsideration, the opposition thereto, and supporting memoranda, it is, by the Court, this 24 day of October, 1984.

ORDERED that the Motion for Reconsideration; For Order setting Aside Rulings of September 27, 1984; And for Other Relief, with Request for a Hearing be, and the same hereby is, denied; and it is

FURTHER ORDERED that this case shall stand dismissed from the dockets of this Court.