**In re B & W MANAGEMENT, INC., Debtor.**

**In re Philip Joseph BROWN, a/k/a Philip J. Brown, Debtor.**

**In re William John BROWN, a/k/a William J. Brown, Debtor.**

**Bankruptcy Nos. 81–00698, 81–00700 and 81–00701.**

United States Bankruptcy Court, District of Columbia.

July 23, 1986.

Brian R. Seeber, Gins & Seeber, P.C., Washington, D.C., for B & W Management, Inc. and William J. Brown.

Bruce Goldstein, Zuckerman, Spaeder, Moore, Taylor & Kolker, Washington, D.C., for John W. Guinee, Jr., trustee in Bankruptcy.

Phillip J. Brown, pro se.

Stanley M. Salus, Docter, Docter & Salus, P.C., Washington, D.C., for Vinco, Inc.

Nicholas A. Addams, Washington, D.C., for Ruth L. Brown.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge, Sitting by Designation.

This matter is before the Court on the debtors' objection to the Third Amended Proof of Claim of Vinco, Inc. ("Vinco") for attorneys' fees, costs, and expenses incurred both pre- and post-petition. Vinco holds an interest-bearing note for $459,-000.00 executed by the debtors on May 23, 1979. The note, secured by a deed of trust on the debtors' real property located in the District of Columbia, includes a clause binding the makers "to pay attorneys' fees and costs of collection should this note in the event of default, be placed in the hands of an attorney for collection." The deed of trust contains a similar clause. After the debtors failed to make the monthly interest payments on the note for over two years, Vinco retained counsel to collect the debt.

Facing foreclosure, the debtors filed a petition for relief in this Court on December 22, 1981 under chapter 11 of the Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 101–151326 ("the Code"). On motion by parties in interest, the Court appointed a chapter 11 trustee pursuant to section 1104 of the Code to manage the property of the estate. The trustee submitted a plan for reorganization as permitted by section 1121 of the Code. After the trustee's plan was confirmed over the debtors' wishes, the debtors filed an objection seeking to abrogate the entire Vinco claim: principal, interest, attorneys' fees, costs and expenses. The debtors subsequently withdrew this objection. In a "supplemental" objection, however, the debtors now contest Vinco's claim for attorneys' fees, costs, and expenses incurred in collecting the note. The debtors and Vinco waived oral argument, preferring to allow the Court to rule on the briefs submitted by the parties.

The debtors' Supplemental Statement in Objection to the Claim of Vinco, Inc. for Attorney's [sic] Fees, Costs and Expenses ("Objection") sets forth several allegations:

I. Vinco's bankruptcy counsel have billed for activities "entirely not related" to collecting the note.

II. The three law firms retained by Vinco to handle different aspects of the collection effort have impermissibly charged for "multi-lawyer conferences."

III. Time sheets submitted by two of Vinco's law firms lack specificity and are inadequately documented.

IV. Hourly rates of pay charged by Vinco's bankruptcy counsel are excessive and hours charged have been spent inefficiently.

V. Vinco's bankruptcy counsel have billed for miscellaneous unjustified activities.

The debtors' Objection includes a rather detailed appendix constructed from the time records submitted by counsel for Vinco and offered in support of the debtors' contention that Vinco's claim for attorneys' fees, costs, and expenses is exorbitant.

Vinco's memorandum in response to the debtors' Objection contains an equally detailed appendix designed to provide a point-by-point refutation of the debtors' objections. Vinco's appendix defends specific time sheet entries attacked by the debtors and attempts to explain why these entries are allowable as part of the claim represented by the note and secured by the deed of trust.

DISCUSSION

■ The Code grants a secured creditor the right to recover attorneys' fees in section 506(b):

To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C. § 506(b). Section 506(b) represents an exception to the "American Rule" requiring each party to bear his own counsel fees. *See Matter of Nicfur-Cruz Realty Corp.*, 50 B.R. 162, 165–66 (Bankr.S.D. N.Y.1985). Secured creditors are allowed to recover their attorneys' fees provided that the requirements of the statute are met: (1) the underlying security agreement or mortgage provides for such fees; (2) the value of the collateral exceeds the amount of the principal debt, accrued interest, and fees sought; and (3) the fees are reasonable.

Both the note and the deed of trust held by Vinco provide for reasonable attorneys' fees and costs of collection should the debtors default on the note and should Vinco place the note in the hands of an attorney for collection. The debtors do not dispute the validity of their contractual agreements to pay attorneys' fees and costs of collection.[1] Neither do they deny that Vinco is oversecured. They object only the reasonableness of the fees claimed. Their objections touch both the hourly rates charged by Vinco's attorneys and the necessity for many of the collection activities performed.

■ The particular attorney-fee clauses contained in the note and deed of trust provide only for the reasonable fees and expenses actually incurred; the clauses do not provide for attorneys' fees to be calculated as a percentage of the total amount

due on the debt. *See, e.g., In re Crafty Fox, Ltd.*, 475 F.Supp. 634, 636–37 (W.D.Va. 1979). In other words, the parties themselves did not stipulate what would be a reasonable fee for collecting this debt. Even if they had so stipulated, their agreement would have been limited by the reasonableness requirement of section 506(b). The ultimate determination of reasonableness is one that the Court alone must make.

Vinco cites a District Court decision for the proposition that although the right to recover attorneys' fees is a matter of federal law, the standard of reasonableness is a matter of state law. *In re Triangle Equipment Co., Inc.*, 26 B.R. 175, 177–78 (W.D.Va.1982). The *Triangle* case, however, is a minority view. A clear majority of the courts have held that reasonableness is to be determined by federal standards or by standards developed by the courts themselves through exercise of their inherent powers. 3 *Collier on Bankruptcy* ¶ 506.-05, at 506–47 through 506–48 (15th ed. 1986).

■ The above-described issue is a matter of first impression in the District of Columbia. Following the majority view, this Court will apply federal standards of reasonableness to the instant fee application. *See, e.g., Matter of Scarboro*, 13 B.R. 439, 442–43 (M.D.Ga.1981) (vacating Bankruptcy Court's determination of reasonableness under Georgia law and remanding for a determination under federal law). *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir.1980) sets forth a "lodestar" approach that has been endorsed by the District Court for the District of Columbia for analyzing bankruptcy fee applications filed pursuant to section 330 of the Code. *See In re AOV Industries, Inc.*, 43 B.R. 468, 472–73 (D.D.C.1984). The lodestar figure equals the number of hours reasonably expended multiplied by a reasonable hourly rate. The lodestar "may then be adjusted to reflect other factors, including the quali-

---

1. Participation in the debtor's bankruptcy proceedings generally is an allowable part of collection efforts under attorney's fee provisions such

as the ones in effect here. *See, e.g., Matter of Salisbury*, 58 B.R. 635, 13 Bank.Ct.Dec. (CRR) 1366, 1369 (Bankr.D.Conn.1985).

ty of representation, the contingent nature of success, the novelty and difficulty of the issues, and the ultimate results obtained by the attorneys." *AOV,* 43 B.R. at 472.

■ Under the lodestar approach, then, the Court initially must determine whether the number of hours billed by counsel is reasonable. Next, the Court determines the reasonableness of the hourly rates and calculates the lodestar. Finally, the Court has discretion to adjust the lodestar figure with reference to the *Copeland* factors.[2]

The debtors' objections will be addressed in the order in which they appear in the index to the debtors' appendix. The Court's findings are based on a close scrutiny of the proofs of claim and memoranda in the light of the Court's intimate familiarity with this chapter 11 proceeding and its informed opinion of the value of the services rendered. *See Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 (4th Cir.1978) (fee allowance a matter of judicial discretion). In its review of the matter at hand the Court has far exceeded the usual level of rigor. *See AOV,* 43 B.R. at 475 (the court need not " 'become enmeshed in a meticulous analysis of every detailed facet of the professional representation.' ").

I. Bankruptcy Counsel's Activities Allegedly Unrelated to Collection of the Vinco Debt.

 1. Opposing the Appointment of Nicholas A. Addams as Counsel for Debtors and Opposing Addams' Fee Applications.

■ The debtors claim that bankruptcy counsel for Vinco, Docter, Docter & Salus, P.C. ("DD & S"), billed $4,344.00 for these activities, which were "non-beneficial" to

the estate and "not in the interest of collecting the note." DD & S explains that it "perceived Mr. Addams as an obstacle to progress in the case" and claims that "Mr. Addams' activities caused delays in the case and in payment to Vinco." DD & S notes that Mr. Addams ultimately was ordered by this Court to limit his representation. In addition, Mr. Addams was ordered to disgorge $24,000.00 in post-petition fees he had accepted from the debtors without the prior approval of this Court.

The Court finds that no adjustment is necessary to DD & S's billings for these activities.

 2. Conferring by Telephone with George F. Bason, Jr.

■ The debtors complain that they should not have to pay counsel for Vinco $1,000.00 "to chew the fat with Bason, to bring him up to date." At the time these conferences occurred, George F. Bason, Jr., the current United States Bankruptcy Judge for the District of Columbia, was a former attorney for the debtors and a major creditor of the debtors' estate. DD & S explains two of these calls as being from Mr. Bason to discuss the status of the case; another call regarded a hearing in which Vinco and Mr. Bason were interested parties and sought similar results. DD & S and Mr. Bason apparently discussed strategy during this call. DD & S claims that 165 minutes of the time the debtors claim were spent talking to Mr. Bason were actually spent working on a motion to dismiss debtors' bankruptcy petitions. In addition, a 15–minute entry claimed by the debtors to have been spent on the telephone with Mr. Bason in fact does not appear on the time sheets for the day claimed. If the 165

---

**2.** Providing additional guidance, the editors of *Collier* note that a Bankruptcy Court making a determination of the reasonableness of fees generally requires (1) detailed descriptions of the services rendered; (2) assurance that the services rendered fell within the scope of services allowable under the contract between the parties; and (3) evidence that the services rendered were reasonably required under the circumstances. 3 *Collier on Bankruptcy* ¶ 506.05, at 506–48 through 506–49 (15th ed. 1986).

Perhaps the most succinct and useful criterion applicable to cases under section 506(b) of the Code has been articulated by the United States Bankruptcy Court for the District of Colorado: attorneys' fees are allowable "where the creditor acted prudently in seeking to protect its interest in the property." *In re Brunel,* 54 B.R. 462, 3 Bankr.L.Rep. (CCH) ¶ 70,826, at 87,957 (Bankr. D.Colo.1985) (fees sought for motion for relief from stay).

minutes of time and the 15–minute entry are subtracted from the total, only 70 minutes of time remain, or approximately $150.00. This amount of time is not unreasonable in the Court's view. Accordingly, no adjustment is necessary to DD & S's statement.

3. Opposing the Withdrawal of Brian R. Seeber as Counsel for Debtors and Opposing Pro Se Representation by Philip J. Brown.

■ The debtors charge that the $312.00 billed for this activity represents "an example of time padding for a useless gesture." DD & S responds that it acted under a belief that Brian R. Seeber's withdrawal in favor of Philip J. Brown would cause prejudicial delay in the case. DD & S also states that instead of $312.00 charged for this activity, its time sheets actually reflect a $187.00 claim.

This item appears reasonable in light of the relatively small amount requested and Philip J. Brown's reputation for being litigious. *See, e.g.,* Report of Examiner, filed June 9, 1982 pursuant to an order entered by Bankruptcy Judge Roger M. Whelan on May 20, 1982, at 9 ("Philip Brown's growing reputation as a litigious person who is extremely difficult to deal with will make prospective lessees increasingly leery of entering into a long term transaction with him.") DD & S believed that Brown's pro se representation would further complicate an already difficult case.

4. Participating in the Hearing Regarding Debtors' Objections to George Bason's Claims Against the Estate.

■ The debtors claim that DD & S charged $125.00 for this activity. DD & S explains that it reviewed some of the early filings regarding Mr. Bason's claim in order to determine whether Vinco's interests would be affected. DD & S denies, however, that it was involved in any other way with litigation over the Bason claim. Accordingly, this charge seems reasonable.

5. Opposing Requests for Stays of the Sale of FAR Rights.

■ The primary asset of the debtors' estate is real property located at 24th and M Streets in the Northwest section of the District of Columbia. A parking garage formerly occupied this property. The property forms part of a square that is in the process of being developed by adjacent owners and other parties. Essential to the trustee's plan of reorganization confirmed by this Court was the sale of Floor Area Ratio ("FAR") development rights associated with the public alleys that border two sides and a portion of the third side of the debtors' property. BNA Washington, Inc. ("BNAW") had negotiated with the debtors for the purchase of the FAR rights prior to the debtors' bankruptcy. Having the debtors' FAR rights would allow BNAW to add an additional two stories to a building it planned to construct in the city block in which the debtors' property is located. In a letter agreement dated March 18, 1981, BNAW agreed to pay $712,500.00 for these rights.

The completion of the sale of these valuable rights to BNAW was crucial to the trustee's plan of reorganization. This Court authorized the sale because the proceeds would provide immediate cash with which to satisfy the interests of Vinco and other priority creditors. The debtors sought a stay of the sale pending appeal. Vinco opposed the stay and worked towards an immediate sale of the FAR rights. The debtors now claim that this opposition constituted "unnecessary involvement and intrusion" because the debtors' attempts to obtain a stay "would not have affected distribution" of dividends to Vinco. On the other hand, DD & S claims that its participation in this matter, involving telephone calls, conferences with counsel for BNAW and the trustee, and legal research, was necessary to speed up the collection process. DD & S points out that at the time these items were charged, Vinco had received no payments on its $459,000.00 note for four years.

Vinco obviously had a strong desire to be paid as soon as possible. According to the debtors' figures, DD & S billed out $10,056.00 for activities related to the alley sale. DD & S vigorously defends virtually all its billings for these activities. The debtors' efforts to reverse the decision to allow the sale to proceed were ultimately unsuccessful.

The participation of DD & S in opposing the stay pending appeal appears to have been reasonable. Therefore, no adjustment to DD & S's bill for this activity is necessary.

### 6. Opposing Debtors' Plan of Reorganization.

■ The debtors claim that since their plan for reorganization provided for full payment to Vinco, there was no reason for DD & S to bill $1,500.00 (or $1,156.25, according to DD & S) to oppose confirmation of the debtors' plan. Vinco favored instead the trustee's plan, which was later confirmed. As the debtors state, both the debtors' and the trustee's plans relied on the "Kaempfer agreement," which, through a stock purchase and loan arrangement, provided a source of capital with which to begin paying Vinco and other creditors. However, only the trustee's plan called for the sale of the FAR rights discussed *supra*, a sale that would provide an immediate and certain infusion of funds. Coupled with the Kaempfer agreement, the FAR sale would generate funds sufficient to allow feasible payment of Vinco's secured claim in full.

Section 1129(c) of the Code provides that when more than one plan meeting the requirements of subsections (a) and (b) of that section have been submitted, "the court shall consider the preferences of creditors ... in determining which plan to confirm." It would follow from section 1129(c) that creditors have a right to inform themselves of the contents and merits of the proposed plans and to participate in the confirmation process so as to make their preferences known. *See Matter of Nicfur-Cruz Realty Corp.*, 50 B.R. 162, 168 (Bankr.S.D.N.Y.1985). DD & S's billings for participation in the confirmation process are reasonable and allowable.

### 7. Aiding Farr-Jewett to Pursue its Rights of First Refusal to Debtors' Property.

■ The debtors object to $1,062.00 in charges for matters involving Farr-Jewett & Associates, Inc. ("Farr-Jewett"). Prior to bankruptcy, the debtors entered into an agreement with Farr-Jewett on May 22, 1979, granting Farr-Jewett an exclusive option to enter into a long-term ground lease of the debtors' property provided that the parties reached agreement on the specific terms thereof following a period of good faith negotiation. The agreement specified that if the parties were unable to agree on terms after negotiating in good faith, then Farr-Jewett would have a right of first refusal to purchase or lease the debtors' property and/or any development rights above the existing structure on the property during the five-year period beginning on completion of the required good faith negotiations.

The debtors imply without proof that Vincent Sheehy, a part owner and officer of Vinco, was a partner of Farr-Jewett and that Sheehy personally stood to gain from Farr-Jewett's right of first refusal. The debtors further imply that DD & S worked to further Farr-Jewett's interests, thereby conferring a benefit on Mr. Sheehy alone for which the debtors should not have to pay under their agreement to pay Vinco's attorneys' fees for collection of the note.

DD & S strenuously denies that Sheehy was a partner of Farr-Jewett, asserting that the only reason DD & S worked on this issue was to insure that Farr-Jewett's participation would not stall the case. Accordingly, DD & S's charge is allowable.

### 8. Aiding Farr-Jewett in its Adversary Proceeding in this Court.

■ Farr-Jewett initiated an adversary proceeding in this Court to protect its rights under the above-described agreement with the debtors. The debtors point

to $2,258.00 in billings of DD & S to aid Farr-Jewett. Again, the debtors claim that activities performed by DD & S regarding this adversary proceeding inured to the benefit of Vincent Sheehy alone. Again, DD & S denies that Sheehy was involved in a partnership with Farr-Jewett and denies that it participated with counsel for Farr-Jewett in planning either the adversary proceeding or the plan of reorganization proposed by Farr-Jewett. DD & S claims that Vinco's main interest in the Farr-Jewett proceeding was to see that it did not stall progress in the case and thus delay payment of Vinco's note.

The determination of Farr-Jewett's rights was of interest to Vinco because without such a determination the chapter 11 trustee could not sell or lease the debtors' property, including the FAR rights. Limited participation in this important determination thus was justified. No adjustment to DD & S's fees is necessary.

II. Charges Allegedly Violating a Statute Prohibiting More than One Member of a Law Firm from Charging for Intra-Firm Conferences.

The debtors insist that bills submitted by Hall, Surovell, Jackson & Colten, P.C. ("HSJ & C") and Philipson, Mallios & Tomar, P.C. ("PM & T") for work done for Vinco consist mainly of conference time spent with Vinco's bankruptcy counsel, DD & S. Because all three firms worked for Vinco, the debtors seemingly believe that they should be treated as one firm; therefore, "by statute," only one lawyer participating in a particular intrafirm conference can properly charge for the conference. DD & S claims that it is unaware of such a statute and requests the debtors to provide a citation.

 This Court is equally unfamiliar with the statute that the debtors invoke without citation. It has been the practice in this Court to inspect the time records submitted by counsel applying for fees to determine, *inter alia,* whether more than one member of the same firm has charged for a conference attended by each. As a

general rule, this Court allows only the attorney with the higher or highest rate to bill for time spent in the conference. This rule is relaxed for special circumstances requiring consultation with counsel possessing special training or experience. In the absence of special circumstances, the general rule prevails because this Court believes that it curbs potential abuse and fosters the preservation of the bankrupt's estate. However, this a local procedure, not a statute, and has always been a subject within the informed discretion of the Court.

 At the Court's request, the United States Trustee filed a response to Vinco's proofs of claim that addresses the subject of intra-firm conferences at DD & S. *See* Response of United States Trustee, *infra.* Remaining to be addressed by the Court are the debtor's objections to multi-lawyer inter-firm conferences involving members of the various firms representing Vinco (DD & S, bankruptcy counsel; HSJ & C, general counsel; and PM & T, foreclosure counsel). DD & S offers several justifications for the inter-firm conferences, one of which being that time spent communicating with Vinco's general counsel was necessary; counsel need to communicate with the corporate client by some means, whether with the principal of Vinco—Vincent Sheehy—or with Vinco's general counsel. DD & S claims that G. Donald Markle of HSJ & C, the general counsel, did not charge for this time. If so, it would be irrelevant whether DD & S talked with Mr. Sheehy or Mr. Markle. However, Mr. Markle's time records lack the detail required to determine whether in fact he did so charge.

DD & S also points out that it had been instructed to communicate with Mr. Markle by Mr. Sheehy, Vinco's principal. DD & S believes that this in itself is sufficient justification, claiming that "[i]f Vinco wants its bankruptcy counsel to apprise its general counsel of developments in the case, and to confer regarding developments and actions to be taken in the case, that is Vinco's right." Moreover, general counsel had

background information on the case prior to the filing of the bankruptcies and information about the size of the debt.

As bankruptcy counsel, it was incumbent upon DD & S to become aware of all the relevant facts. This case involved complex matters, and all material issues were hotly contested. The Court finds, therefore, that the time DD & S spent conferring with other Vinco counsel is allowable. Adjustments to billings by the other two Vinco law firms will be made in the next section of the discussion.

### III. Allegedly Undocumented Bills Submitted by HSJ & C and PM & T.

 The debtors request that bills submitted by HSJ & C and PM & T be denied *in toto* because of inadequate descriptions of the activities charged. DD & S responds that the bills "clearly are sufficient for the small amounts involved." HSJ & C requests $11,264.25 (includes $13.00 expenses); PM & T, $1,113.75 (includes $63.75 expenses).

The debtors appear to be justified in complaining about these bills. Many of the entries on the statement submitted by HSJ & C lack any description whatsoever except for the month-long billing periods during which they were charged. These entries are offered with the explanation that the time records for these periods were destroyed. DD & S claims that Mr. Markle's personal work diaries have information on these entries regarding specific dates, times, and descriptions of work performed, but these diaries are not before the Court. The bill submitted by PM & T is even less satisfactory, having a single time-charge entry lumping numerous activities together into a single 10.5 hour block of time. Without adequate descriptions of the services rendered by HSJ & C and PM & T, it is impossible to determine whether the fees are reasonable.

Because of the lack of documentation, the Court has no choice but to deny the fees sought. *See Cohen & Thiros, P.C. v. Keen Enterprises, Inc.*, 44 B.R. 570, 573–74 (N.D.Ind.1984) (fee request disallowed because of inadequate time records; court noted that "attorneys are foolish to dispose of their time records before they receive their compensation"). However, reimbursement for actual out-of-pocket expenses will be allowed.

### IV. Excessive Hourly Rates and Excessive Hours Charged by DD & S.

#### 1. Reasonableness of Hourly Rates.

 The debtors object to the hourly rates charged by Stanley M. Salus ($125.00), Carl T. Gulliver ($85.00), Patricia S. Channon ($85.00), and various law clerks ($40.00) of DD & S. Counsel for debtors in the instant matter, Nicholas A. Addams, complains that although he is at least as experienced as Mr. Salus, the Court allowed him only $60.00 per hour for his work through October 31, 1983. The debtors cite *Environmental Defense Fund v. Environmental Protection Agency*, 672 F.2d 42 (D.C.Cir.1982) in support of their claim that DD & S's rates are excessive. The fee schedules mentioned in *Environmental Defense Fund* would allow an attorney with 7–11 years' experience to charge $110.00 per hour; one with 4–9 years' experience, $80.00–$90.00; and one with under four years experience, $55.00–$65.00. 672 F.2d at 58.

According to DD & S, at that time Mr. Salus had been practicing for fifteen years, while Mr. Gulliver and Ms. Channon had each been practicing for four years. DD & S claims that its hourly rates are well within reason, citing *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354 (D.D.C.1983). *Laffey* found the following rates to be reasonable in the District of Columbia for "complex federal litigation":

$150.00 per hour for attorneys with 11–19 years' experience;

$125.00 per hour for attorneys with 8–10 years' experience;

$100.00 per hour for attorneys with 4–7 years' experience; and

$75.00 per hour for attorneys with 0–3 years' experience.

572 F.Supp. at 371, 374–75. The *Laffey* opinion also approved a rate of $30.00 per hour for law clerk and paralegal time, concluding that this figure is "fair and reasonable" for the District of Columbia. *Id.* at 386 n. 74. The *Laffey* opinion would appear to be a more reliable indicator of reasonableness of hourly rates than *Environmental Defense Fund*. *Environmental Defense Fund*, by the debtors' admission, is at least two years out of date. *Laffey* is roughly contemporaneous with the billing periods in question. Furthermore, *Laffey's* rates have been approved for use in District of Columbia bankruptcy cases. *See AOV*, 43 B.R. at 472.

The hourly rates for attorneys found reasonable for the "complex federal litigation" performed in *Laffey* are somewhat higher than the rates requested by DD & S. Accordingly, DD & S's hourly rates for attorneys are acceptable by the *Laffey* standards. However, DD & S's law clerk rates of $40.00 per hour and paralegal rates of $35.00 per hour are higher than the $30.00 rate approved by *Laffey* and should be reduced accordingly. The Court will allow an hourly rate of $35.00 for law clerks and $30.00 for paralegals.

2. Reasonableness of Number of Hours Charged.

a. Motion to Dismiss.

 DD & S moved to dismiss the bankruptcy petition after it was filed by the debtors. The debtors do not question the wisdom of pursuing this motion, but they consider the time spent, resulting in a charge of $2,331.00, to be "clearly excessive." The debtors opine that DD & S spent twice as much time on this motion as was required and thus request a fifty percent reduction in the $2,331.00 charged.

In response, DD & S stresses the importance of the motion to Vinco. A successful motion would have allowed the foreclosure action instituted before bankruptcy to resume. Vinco could have obtained prompt satisfaction of its note in 1982. DD & S also stresses the complexity of the issues involved. The time spent on the motion to

dismiss was necessary, DD & S concludes, and is not excessive. Mr. Salus charged approximately six hours for this item; a law clerk charged 39 hours.

The amount sought will be reduced to $2,000.00 and allowed.

b. Motion for Relief from Stay.

 According to the debtors, DD & S charged $7,500.00 for hours spent working on a motion for relief from the automatic stay of section 362 of the Code. The debtors query why such a "fairly routine" motion required so much time to research and present, and they point out that the motion was "withdrawn on October 27, 1983, and continued pending the outcome of the confirmation hearing on January 9, 10 and 24." The debtors also object to "exorbitant" amounts of time spent by DD & S preparing questions for depositions in conjunction with the motion and interviewing the deponents.

DD & S asserts that its motion for relief from stay was far from routine. When cause for relief is clear, such as when the debtor lacks equity in the collateral, DD & S concedes that a routine motion is possible. In this case, however, DD & S points out that the debtors have always had enormous equity in their real property—thus "substantial research and careful writing were required.... Thoroughness was vital." DD & S claims that the debtors incorrectly stated that Mr. Salus of DD & S spent 25 hours writing and revising the motion. According to DD & S, Mr. Salus actually spent only about half as much time on this activity. The discovery proceedings Mr. Salus conducted were necessary, says DD & S, and should be compensable.

The Court has inspected the diaries submitted by DD & S. Time spent working on the motion for relief from stay appears to have been reasonable, and there is no question that the aggregate charge for this time is well under the $7,500.00 figure quoted by the debtors. Consequently, there is no need for a downward adjustment to DD & S's bill.

c. Lengthy Conferences with Other Vinco Attorneys and Attorneys for Other Parties in the Case.

 The debtors object to time charged by Stanley Salus for conferring with Donald Markle, general counsel for Vinco, and counsel for the trustee, labeling it impermissible "chit-chat." Conferences with and letters to Mr. Markle "should be totally disregarded, since Markle no doubt simply reported to Sheehy and made his claim in his bill." Either Mr. Salus' time or Mr. Markle's time should be disallowed, say the debtors. The debtors calculate Mr. Salus' charges to be $2,875.00.

DD & S responds that contacts with Mr. Markle were necessary to keep the client, Vinco, informed and that conferences with counsel for the trustee were desirable to protect Vinco's interests by pressuring the trustee to proceed with the case and thus speed up payment to Vinco. Keeping the client informed and maintaining pressure on the trustee are not matters involving "idle chit-chat," asserts DD & S.

The Court has inspected the time sheets submitted by DD & S and believes that a $375.00 reduction is warranted.

d. Motion to Appoint a Trustee.

 The debtors claim that DD & S spent an excessive amount of time working towards the appointment of a trustee. The $2,267.00 billed by Stanley Salus and a law clerk is excessive because, according to the debtors, DD & S "either joined the Motion by Bureau of National Affairs [BNAW] or wrote a perfunctory supporting motion of [its] own." DD & S strongly denies the suggestions of the debtors and stresses the importance of the appointment of a trustee to its client, Vinco. After the Court denied its motion to dismiss the debtors' bankruptcy petitions, Vinco's next best interest was to work for the appointment of a trustee pursuant to section 1104 of the Code; consequently, Vinco's motion to appoint such a trustee was not "perfunctory," DD & S contends. A law clerk prepared a draft of a memorandum in support of the motion, and then Mr. Salus reviewed it. This procedure achieved both quality and economy, says DD & S. After a trustee had been appointed, DD & S wrote its own opposition to reconsideration of the appointment.

Time spent consulting with other counsel interested in the appointment of a trustee was essential, says DD & S. Coordination of work among counsel for parties with common interests in matters such as the motion to appoint a trustee could not have wasted time: "If anything, coordination between counsel reduced the work of each counsel." At any rate, DD & S claims that the complexity of the case demanded communication with other counsel. DD & S points to the fact that the Court actually appointed a trustee to vindicate its efforts towards that end. DD & S charges that the debtors had no basis for objecting to such coordination and communication. Once again, DD & S insists, the debtors are objecting to work that would not have been necessary but for delaying tactics initiated by the debtors themselves; and, once again, they are mischaracterizing and inflating DD & S' charges.

After reviewing the time sheets submitted by DD & S, the Court finds the charges for time spent working for the appointment of a trustee to have been reasonable.

e. Review of the Kaempfer Documents and Attendance at Confirmation Hearing.

 The debtors claim without elaboration that time spent reviewing the Kaempfer documents in this case was "excessive." The Kaempfer lease agreement provided the major source of capital for funding the trustee's and the debtors' plans of reorganization. DD & S charged $1,417.00 for reviewing the documents and attending the confirmation hearing.

In its appendix, DD & S stresses the importance of the Kaempfer agreement to the funding of the plan and claims that part of the time the debtors have allocated to Kaempfer activities was actually devoted to relief-from-stay activities. Some of

this time was also spent in preparing for Joseph Kaempfer's deposition, DD & S states.

The debtors also allege that Carl Gulliver's attendance at the two-day confirmation hearing was unnecessary. DD & S did not need to attend these hearings, the debtors say, because Vinco "would have been paid from either of the two plans which the Court approved." Mr. Gulliver silently monitored the hearing and spoke for only about ten minutes at its conclusion, say the debtors. The debtors claim that the only other time Mr. Gulliver participated in the hearings was to speak on behalf of George Bason, though in what capacity debtors do not say.

DD & S explains that Mr. Gulliver represented Vinco at the hearing because Stanley Salus was out of the country and unable to attend. Mr. Gulliver prepared for this appearance by reviewing the plans and oppositions on file. DD & S does not offer an express rebuttal of the debtors' charge that Mr. Gulliver's attendance at the hearing was unnecessary; however, DD & S has already made it clear that it considered only the trustee's plan to be acceptable to Vinco and wanted to do everything possible to ensure its acceptance. DD & S concedes in its appendix that fifteen minutes of charges were attributable to Bason.

The Court has reviewed the records and believes that the charge for this activity should be reduced by $417.00 to $1,000.00.

## V. Miscellaneous Allegedly Unjustified Activities Performed by DD & S.

### 1. Filing Probate Claim.

█ The debtors call for the rejection of DD & S's charge of $202.00 for filing a claim against the estate of Joseph L. Brown. The debtors concede that this is a "small matter," but question why it took Stanley Salus and a law clerk an hour and a half to fill in the blanks of a single-page form filed with the Superior Court of the District of Columbia, Probate Division. This activity was "negligent and ineffec-

tive," say the debtors, for the claim was time-barred.

DD & S states that the probate claim was important because one of the debtors, Philip J. Brown, was Joseph L. Brown's sole heir. In its appendix DD & S claims that its time diaries show that it did not spend as much time on the claim form as debtors have alleged, although DD & S does not provide a specific amount by which debtors' figure of $202.00 is excessive.

The Court has reviewed DD & S's time records for this activity and finds that no reduction in the charge is warranted.

### 2. Researching Circumvention of the Bankruptcy Court.

█ The debtors believe that time spent by DD & S exploring the possibility of collecting its fee without filing an application with this Court should not be allowable. According to the debtors' figures, DD & S claims $1,170.00 for this activity.

DD & S responds that its search for authority to collect its fees as part of Vinco's secured claim without the Court's review was partially successful. However, this answer misses the point of the debtors' objection; the issue is whether the activity itself is allowable, not whether it was successful. Success could be a factor, but it is not dispositive.

DD & S also claims in its appendix that the debtors have once again mischaracterized DD & S' time sheet entries to inflate the amount of time spent on this activity. The fee question was only one of several that were researched, says DD & S.

The Court believes that any charges for this activity should be disallowed in full. From an inspection of the time sheets it appears that DD & S charged approximately $190.00. This amount will be deducted from the final award.

### 3. Preparing Fee Applications.

The debtors are "certain" that the Bankruptcy Court does not allow counsel to charge for time spent preparing a bill.

DD & S believes that the debtors are simply wrong on this point, noting that the District of Columbia Bankruptcy Court has always allowed time spent in preparing fee applications. However, this Court remains convinced that charging for time spent preparing fee applications is inherently improper, regardless of the usual practice in the District of Columbia.

The United States Trustee addressed this problem in his response to Vinco's Third Amended Proof of Claim, and DD & S has responded with a voluntary reduction in the amount sought. *See* Response of United States Trustee, *infra.*

4. Reviewing Docket Sheets; Remaining Objectionable Charges.

The debtors question the reason for seventy minutes spent reviewing docket sheets and 105 minutes charged for other activities. DD & S explains that forty minutes were billed on May 26, 1983 to review docket sheets relevant to Vinco's opposition to the debtors' motion for a stay of the sale of the FAR rights pending appeal. Thirty minutes billed on September 17, 1983 were spent reviewing docket sheets relevant to Vinco's motion for relief from stay. DD & S also explains two other entries listed in the debtors' appendix as objectionable miscellaneous charges. First, on July 2, 1982, Stanley Salus met with George Bason and Jerry Collins, an attorney representing a non-debtor member of the Brown family, to discuss strategy for obtaining the appointment of a trustee. Vinco's reason for desiring a trustee has been explained previously. Second, on November 17, 1983, Mr. Salus telephoned counsel for the trustee to discuss the possibility of a settlement between the debtors and BNAW. Presumably this settlement concerned the FAR rights discussed previously.

The charges objected to by the debtors appear reasonable and necessary to the Court. Accordingly, no reduction is necessary.

VI. Final Remarks.

What the debtors obviously would like is a result similar to the one in *Ashton v. Pierce*, 580 F.Supp. 440 (D.D.C.1983). In *Ashton*, Judge Gerhard A. Gesell cut the requested fee nearly in half, citing an "insistent impression of duplication, expenditure of time on unreasonable and unproductive research, and reliance on inexperienced assistants." 580 F.Supp. at 442. Judge Gesell refused to allow law clerks and paralegals to bill time as professionals, instead merely allowing their firm reimbursement for their hourly wages. *Id.* at 443. The debtors ask the Court to review *Ashton* and consider it in lieu of the "many arguments" they themselves could make.

DD & S effectively distinguishes *Ashton* in several ways. The Court agrees that *Ashton* does not shed light on the instant case. First, the fee application in *Ashton* was made pursuant to the Equal Access to Justice Act. The Act includes a cap on hourly rates, which DD & S implies may have led to time-padding. Second, the *Ashton* court noted that the recording system employed by the applicants provided only "cryptic" descriptions of the work performed, making it difficult for the court to review the application properly. DD & S' time sheets, however, provide relatively complete and clear descriptions of the activities performed. Finally, in *Ashton*, the court treated paralegal and law clerk time as an "expense" only because of the Act's "restrictive approach" towards litigation expenses. If the case had arisen under another statute, such as the Freedom of Information Act, the court implied that law clerk time could have been compensable as attorney time. *Ashton*, 580 F.Supp. at 443.

An additional distinguishing factor in the *Ashton* case not mentioned by DD & S is the sheer number of participants involved. Eleven attorneys, fourteen law clerks, and nine paralegals participated in the presentation, twenty-four players in all. Coordination of efforts must have been difficult with so many persons working on the same project; at least some duplication of efforts would be inevitable. By contrast, eight persons—a more manageable number—from the DD & S firm participated in the

instant case: Marcia Docter, Stanley Salus, Patricia Channon, Carl Gulliver, three law clerks, and a paralegal.

RESPONSE OF UNITED STATES TRUSTEE

■ To aid in its evaluation of Vinco's claim for attorneys' fees and costs, the Court requested the United States Trustee ("Trustee") to file a response. The Trustee objected to DD & S' charges for intra-office conferences (billing by each attorney involved instead of by only the higher or highest paid attorney), "blocked" time (billing several services together in one multi-hour block of time without breaking down the time spent on the individual services, making it difficult to determine whether the services were reasonable and necessary), travel time (billing for local travel time) and fee application time (billing for time spent preparing time sheets and fee applications). With regard to the billing statement of HSJ & C, the Trustee notes charges for local travel time, time spent eating lunch, and fee application time. Furthermore, documentation and detailed statements of services rendered by HSJ & C and PM & T are inadequate, says the Trustee, echoing the Court's previously stated view.

After conferring with the Trustee pursuant to the request of this Court, DD & S has voluntarily agreed to reduce its requested fees by the following amounts:

| | |
|---|---|
| Intra-Office Conferences: | $244.00 |
| "Blocking": | 427.00 |
| Travel Time: | 225.00 |
| Fee Application Time: | 250.00 |
| | $1,146.00 |

The Court approves of these voluntary reductions, which appear in greater detail in a "Stipulation Between United States Trustee and Vinco, Inc. Concerning Attorney's Fees and Costs" filed in the record.

CONCLUSION

Section 506(b) of the Code represents a compromise between two competing policies. The subsection's reasonableness requirement fosters the rehabilitative policy of chapter 11 by preventing an oversecured

creditor from opposing a debtor's reorganization "without regard to the probability of success on the merits at the debtor's expense." *Matter of Nicfur-Cruz Realty Corp.,* 50 B.R. 162, 174 (Bankr.S.D.N.Y. 1985). On the other hand, section 506(b) unquestionably champions the policy in favor of giving the oversecured creditor "the benefit of his bargain." 3 *Collier on Bankruptcy* ¶ 506.05, at 506–49 (15th ed. 1986).

In *In re American Metals Corp.,* 31 B.R. 229 (Bankr.D.Kan.1983), the court allowed an oversecured creditor's fee claim in full because it was reasonable under section 506(b). The services provided by the creditor's attorney were numerous. Among other things, counsel contested the debtor's motions to use cash collateral and to extend the time in which to file a plan, sought the appointment of an examiner, defended against the debtor's $350,000.00 breach of contract claim, sought relief from the stay, sought to convert the case to chapter 7, and monitored the liquidation of its collateral. As in the instant case, the debtor's "opposition at every juncture rendered [counsel's] task complicated and difficult" and the debtor's "continual obstructions and lack of cooperation cost [the creditor] a significant amount of time and labor." 31 B.R. at 236. The court found the number of billed hours reasonable in light of the debtor's conduct. *Id.* As in the case at bar, the creditor's oversecured status was never in dispute. *Id.* at 231.

■ With the *American Metals* case and section 506(b) firmly in mind, the Court now returns to the lodestar analysis mandated by *In re AOV, supra,* 43 B.R. at 472–73. After reductions made by the Court and voluntary reductions made by counsel following discussions with the United States Trustee, the resulting number of hours charged by counsel for Vinco is reasonable. This finding of the Court is based not only on the foregoing discussion of the debtors' objections but on an independent inspection of all pertinent materials, including Vinco's proofs of claim. Having previously found the hourly rates

charged by counsel to be reasonable, the Court finds the lodestar figure to be the fee amount of $83,480.35 sought in Vinco's Third Amended Proof of Claim, less both the Court-made and voluntary reductions of $15,625.25, or $67,855.10.[3] *Copeland* does not compel adjustment of the lodestar figure in the instant case; the quality of representation was high, but the results achieved were not such as to merit a premium. *Compare In re Nova Real Estate Investment Trust*, 30 B.R. 347, 348 (Bankr. E.D.Va.1983) (Docter, Docter & Salus, P.C. awarded a ten percent premium for increasing senior subordinated noteholders' payout from an anticipated 80 to 85 percent to 104 percent). The Court has reviewed the costs requested by Vinco and finds them to be necessary and reasonable. Accordingly, Vinco's Third Amended Proof of Claim is allowed in the amount of $67,855.10 for fees and $3,397.83 in costs.

An appropriate order will enter.

---

3. The award sought in Vinco's Third Amended Proof of Claim and the necessary reductions thereto are set forth below:

