**In re Arthur REPOSA, Peter Reposa Debtors.**

**Bankruptcy No. 8500579.**

United States Bankruptcy Court,
D. Rhode Island.

Dec. 29, 1988.

---

Donald M. Collins, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., Harold Demopulos, Demopulos and Demopulos, Providence, R.I., for Mellon Bank.

Louis A. Geremia, Quinn, Cuzzone & Geremia, Providence, R.I., Trustee.

William Chaika, Cranston, R.I., for Arthur Reposa and Trustee.

Thomas Quinn, Providence, R.I., for Peter Reposa and Trustee.

## DECISION ON APPLICATIONS FOR ATTORNEY FEES

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

These are converted Chapter 11 cases in which, from the outset, there was constant pressure and activity by the first secured creditor, Mellon Bank, to obtain relief from the automatic stay, and to foreclose upon its security interest in a fishing vessel owned by the debtors prior to these filings.

Before us for consideration are applications for compensation by Donald M. Collins, Esq. of the firm of Stradley, Ronon, Stevens & Young, and Harold W. Demopulos, Esq. of the firm of Demopulos and Demopulos, for services rendered as co-counsel for Mellon Bank. The applicants request $70,568 and $7,271, respectively, totaling $77,839 for services in collecting the Bank's claim in the amount of $314,-845.96, which includes principal and interest. The debtors and the Trustee object to the applications on the ground that they are excessive, and we agree.

At the outset, and although it is by no means the only basis for our rulings below, we note that the applicants have failed to provide the degree of documentation required in the First Circuit regarding fee applications. The information submitted by Mr. Demopulos fails to identify the amount of time expended for a particular service, or a description of the services rendered. Mr. Collins' records, while slightly more informative than Mr. Demopulos', are confusing in their organization, and lack, in at least one-third of the invoic-

es submitted with the fee application, any supporting material to detail dates of services, hours expended or the nature of the services rendered. The general "services rendered" invoices sent to Mellon Bank by Collins provide no assistance in determining what services and what amounts of time are compensable for the collection of this debt, in this Court.

██ In *King v. Greenblatt*, 560 F.2d 1024, 1027 (1st Cir.1977), the First Circuit Court of Appeals established that "attorneys must submit to the court a detailed record of the time spent on the case and the duties performed." Where the applications "simply list a certain number of hours and lack such important specifics as dates and the nature of the work performed during the hour or hours in question [they] should be refused." In 1984, in *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945 (1st Cir.1984), the First Circuit again dealt with this issue and concluded that "henceforth, in cases involving fee applications for services rendered after the date of this opinion, the absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award, or in egregious cases, disallowance." *Id.* at 952. Based on these instructions, we are required to reduce the subject fee petitions: (1) wherever we are unable to ascertain the nature of the service provided; (2) whenever it is unclear whether the activity involved collection of the obligation in question; or (3) wherever the hours expended are not stated. Clearly, reductions are in order, based on the foregoing guidelines. Additional factors, however, also weigh heavily against the applications in question. The legal services rendered concern the collection of a pre-petition debt, originally in the amount of $300,000,[1] which was assumed by the Reposas when they purchased the

WILFRETA LEE[2] from North Atlantic Fishing, Inc. (hereinafter "NAF"). The note and suretyship agreement originally entered into between Mellon Bank and Lee/NAF on April 29, 1983, was assumed by the Reposas by an Assumption of First Preferred Mortgage and a Guaranty executed on May 11, 1984. Said Guaranty provided that

> Guarantors hereby authorize any attorney of any Court of Record in Pennsylvania, or elsewhere, to appear for Guarantors (or either of them) in any action brought on this Guaranty, and to confess judgment against Guarantors (or either of them) in any action brought on this Guaranty, and to confess judgment against Guarantors (or either of them) for all principal and interest and all other sums then due pursuant to the terms of the Note, Mortgage, Security Agreements, and other agreements and documents delivered therewith, or any of them, and for costs of suit and a reasonable attorney's commission not to exceed five (5%) percent of the amount due and for so doing this shall be a good and sufficient warrant.

The applicants seek to enforce this provision under 11 U.S.C. § 506(b), which provides:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

Hence, to collect such attorneys' fees, three requirements must be met: (1) the underlying agreement must provide for fees;[3] (2)

---

1. The original amount of the loan from Mellon Bank to Lee/NAF was $300,000. At the time the Reposas assumed the loan, the balance was $282,500.06.

2. The WILFRETA LEE was renamed the KARI AND STEPHANIE after the purchase.

3. This Court is not bound, however, by the fee provisions contained in the loan agreement.

The requirement of Code Sec. 506(b) that fees be 'reasonable' imposes a limitation on the amount of contractually agreed upon attorneys' fees which may properly be awarded by the bankruptcy court, in addition to any limitation or consideration that would be placed under state law. This reasonableness requirement mandates that the bankruptcy court

the value of the collateral must exceed the amount of the debt, including the interest and fees sought; and (3) the fees requested must be reasonable. *In re B & W Management, Inc.*, 63 B.R. 395, 400, 14 B.C.D. 837, 838 (Bankr.D.C.1986).

The first two requirements are met here. The guaranty provides for the collection of fees, and the collateral, which sold for $425,000, exceeds the claim of Mellon Bank ($314,845.96, excluding attorney fees). Therefore, the only issue remaining is the reasonableness of the fee requests. In this regard, "[t]he ultimate determination of reasonableness is one that the Court alone must make." *In re B & W Management, supra*, 63 B.R. at 401, 14 B.C.D. at 839; *see also In re Miracle Enterprises, Inc.*, 57 B.R. 133, 135 (Bankr.D.R.I.1986). In making such determinations, bankruptcy courts in the First Circuit are required to consider the criteria outlined in *King, supra*,[4] and to apply these factors according to the "lodestar" approach.[5] *In re Casco Bay Lines, Inc.*, 25 B.R. 747, 754 (B.A.P. 1st Cir.1982); *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3rd Cir.1973), adopted by First Circuit in *Furtado v. Bishop*, 635 F.2d 915 (1st Cir.1980).

The first of the *King* factors requires scrutiny of the "time and services provided." To justify the time spent and services provided, the applicant must demonstrate the necessity for and reasonableness of those services. "An oversecured creditor who seeks reimbursement for attorney's fees under Sec. 506(b) must show how those services rendered were necessary to protect its interest regardless of a broadly worded provision in the agreement." *Pasatiempo Properties & Pacific Loan Management v. LeMarquis Associates (In re LeMarquis Associates)*, 65 B.R. 719, 724, 15 B.C.D. 238, 241 (Bankr.E.D.Cal. 1986). In this proceeding, as in *In re Miracle Enterprises, Inc., supra*, Mellon Bank was never "in jeopardy of being undersecured," since it was the first secured mortgage holder on the WILFRETA LEE, whose value was always far in excess of the bank's claim,[6] and since the Reposas neither challenged the validity of the bank's security interest nor objected to the amount of its claim, legal services were not required as to either of these matters.

■ Of the services performed by Mr. Collins, he first requests $4,300 for services in representing Mellon Bank during the negotiations of the NAF–Reposa sale of the WILFRETA LEE. We fail completely to see how these services were related to the collection of the debt of the Reposas, since they hadn't yet even obligated themselves to NAF or Mellon Bank. At that time, the bank was simply looking for a new candidate to start making mortgage payments, after NAF and Lee became delinquent, and although Mellon Bank had an

---

consider, among other things, both the policies and the purposes of the Bankruptcy Code. *In re Wonder Corp. of America*, 72 B.R. 580, 588, 15 B.C.D. 1168, 1173 (Bankr.D.Conn.1987) (citing from *Matter of Nicfur–Cruz Realty Corp.*, 50 B.R. 162, 167 (Bankr.S.D.N.Y.1985)).

**4.** *King v. Greenblatt*, 560 F.2d 1024, 1026–1027 (1st Cir.1977), adopted the twelve factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir.1974): 1) the time and labor required; 2) the novelty and difficulty of the question presented; 3) the skill required to perform the legal services; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee in the community; 6) whether the fee is fixed or contingent; 7) time limitations imposed by client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorney; 10) the undesireability of the case;

11) the nature and length of the professional relationship with the client; 12) awards in similar cases. Additionally, *King* added two other factors: 1) avoid duplication by more than one attorney and 2) distinguish between legal and clerical or investigative work.

**5.** The "lodestar" approach involves a calculation of the number of hours reasonably expended, multiplied by a reasonable hourly rate. This result is then adjusted to reflect various factors such as the contingent nature of the proceeding, the quality of representation and the final results. *See In re Casco Bay Lines, supra*, at 756; *In re Miracle Enterprises, Inc., supra*, at 136 n. 8.

**6.** The Reposas purchased the vessel for $665,000, and it was sold by the Trustee for $425,000. Mellon Bank's claim of $282,500.06 when assumed by the Reposas, was fully paid in the amount of $314,845.96.

obvious interest in monitoring such activities, legal services for doing so are not chargeable against either of the Reposa bankruptcy estates. Accordingly, $4,300 is disallowed, for the reasons stated.

In August 1984, the Reposas defaulted on their loan obligations, and at that time negotiations took place with the bank. While certain of those post-default services may have been necessary, Mr. Collins has failed to state the amount of time involved in this activity, on what dates, or at what hourly rate.[7] On September 12, 1985, Arthur Reposa filed his petition in bankruptcy. From that point on, the activities of Mellon Bank, which ranged from hyperactive to nearly hysterical, were essentially carried on by Mr. Collins (and his associates), and Harold Demopulos, Esq. Mr. Demopulos was retained as co-counsel because "he is familiar with the judicial procedures, customs and personnel of the bench and bar of Providence." (Mellon Bank's Exhibit E-3 to the Motion for Distribution Among Lien Creditors), even though Collins "has had several decades of experience in the bankruptcy courts of the Philadelphia area and throughout the country." (Mellon's Exhibit E-3).

█ While this Court recognizes the importance of, and in fact requires the presence of local counsel, *see* local District Court Rule 5, it also has the responsibility to assure that the debtor's estate does not pay twice for the same service by each co-counsel. *In re Bible Deliverance Evangelistic Church*, 39 B.R. 768, 777 (Bankr.E. D.Pa.1984). We have previously noted the fundamental premise that "courts may not allow double compensation for the same services, where attorneys are acting jointly in the same capacity." *In re Yankee Sea-*

*food Corporation*, 53 B.R. 285 (Bankr.D.R. I.1985) (other citations omitted), and that "it is the court's responsibility to refuse compensation for excessive, unnecessary, or duplicative hours." *Id.* A pre-trial conference on "all matters" was held on January 29, 1986, and attended by both counsel. This double appearance was necessary in order for both attorneys to become familiar with the issues and matters in dispute, including the bank's involvement, and to enable counsel to decide how future services and/or litigation should be assigned. Thereafter, however, both counsel appeared on July 1, 1986, on the bank's motions to convert, and for relief from stay. At that hearing, only Mr. Collins' attendance is compensable, since he alone conducted the hearing on behalf of Mellon, with no showing of the necessity for two attorneys to be present. Two other hearings were held on August 20, 1986, and January 13, 1987, with both counsel present, but with only Mr. Collins participating. Again, the presence of co-counsel was not required. In connection with the duplicity issue, are travel expenses charged to the Reposas' estates. Mr. Collins' has, quite liberally, and without regard for cost-effectiveness, included "disbursements" for air fare and hotel accommodations, often for matters which his local counsel should have, or in some circumstances, also did handle. Moreover, we are unable to reconcile some of the dates and claimed expenses with scheduled hearings.[8]

█ We must also consider what services were necessary, after the bankruptcy filings, to protect Mellon's claim and security interest. As previously noted, Mellon Bank was extremely aggressive in these proceedings. Within four months of the

---

7. Collins' application contained invoices sent to Mellon Bank during this period for services rendered "in connection with a certain loan and related obligations outstanding to North Atlantic, Inc." However, there were no corresponding documents detailing the nature of those services, the time invested or the hourly rate charged.

8. For instance, Mr. Collins submitted a disbursement charge for air fare to Providence on January 22, 1986 and March 24, 1986, dates on

which there either were no hearings on the Reposa bankruptcy, or on which his attendance was not noted. Also, he charges for hotel accommodations at the Providence Biltmore for June 18, 1986 and March 10, 1987, with neither date reflected on the Court docket for appearances in any bankruptcy proceedings. Likewise, the application fails to explain the necessity for the presence of Philadelphia counsel here, even in the absence of a scheduled court hearing.

filing of the petition, Mellon had brought, and pursued rigorously, motions for relief from the stay and to dismiss or convert the case, all while it was clearly over-secured. Following these motions, the bank began a series of pleadings to practically every action taken by the debtor, including objection to: the debtor's motion to compel it to answer interrogatories; motion to amend the pretrial order; motion to borrow an additional $21,000 for boat repairs; motion to make payment to Rhode Island Hospital Trust of $750.00; request for release of funds; motion for stay pending appeal; and request for production of documents. Mellon also objected to NAF's motion for relief from stay and entry of proposed order by NAF's attorney. Without ruling in detail as to the merits of each of these objections, nor deliberating at length over the appropriateness of each motion brought by Mellon,[9] we are satisfied that a large proportion of the services in question were either duplications, or not necessary, either to the collection of, or to protect the bank's claim.

As we have said before:

It is inherently unreasonable to ask a debtor to reimburse attorneys' fees incurred by a creditor that are not cost-justified ... or necessary to preservation of the creditor's interest....

*In re Miracle Enterprises, supra,* at 136, (citing *In re Nicfur–Cruz Realty Corp.,* 50 B.R. 162, 169 (Bankr.S.D.N.Y.1985)). Additionally, the determination of a reasonable fee allowance lies within the broad discretion of the bankruptcy court. *In re Casco Bay Lines, Inc., supra,* at 753; *King, supra,* at 1026.

In this matter we are unable to determine with precise accuracy the excessiveness of the fees requested, but because of:

their previously described informational deficiencies; our disapproval of the duplication of time involved; the hyperactive collection efforts of the bank (which were unnecessary in light of the large equity cushion enjoyed by the bank); the amount of the request in relation to the size of the claim (25%); as well as the other *Greenblatt* criteria, to the extent that they are applicable, the requests must be substantially reduced. Based upon the entire record in these proceedings, and with the recognition that a determination in these circumstances necessarily includes an element of subjectivity, we conclude that the maximum value of the services and expenses[10] required by, and rendered in behalf of Mellon bank is $35,000,[11] and said amount is awarded to Donald Collins, Esq. and Harold Demopulos, Esq. jointly, for them to apportion as they deem proper.[12]

Enter Judgment accordingly.

---

9. Mellon brought motions for: (1) relief from stay, (2) dismissal or conversion, (3) distribution among lien creditors, (4) order of notice, and (5) to file additional evidence.

10. We have lumped the legal services and expenses together, in the same manner Collins did in his application.

11. We have only decided that $35,000 is the maximum value of said services which are prop-

erly chargeable against these consolidated bankruptcy estates. Whether Messrs. Collins and Demopulos are entitled to the full amount of their request as against Mellon Bank, is a matter between attorney and client.

12. As we noted previously, many of the nonsubstantive hearings should have been handled by local counsel, in an effort to minimize travel and subsistence costs, and total time involved.